UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| ANGEL SANTIAGO LUNA,<br><br>       **Plaintiff,**<br><br>v.<br><br>NANCY BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>       **Defendant.** | Civ. No. 16-4392 (KM)<br><br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

  Angel Santiago Luna brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

### I. BACKGROUND

  Mr. Santiago Luna seeks to reverse an ALJ's finding that he was not disabled from July 10, 2011, the alleged onset date, through February 11, 2015, the date of the ALJ's decision. (R. 22-31).[1]

  Santiago Luna completed his application for DIB on January 9, 2013, alleging that he has been disabled since a July 10, 2011 accident. (R. 92, 104). The specific disabilities alleged were plates and screws in his left tibia/knee,

---

[1] Pages of the administrative record (ECF no. 6) are cited as "R. __." The Brief in Support of Plaintiff (ECF no. 10) is cited as "Pl. Br." Defendant's Brief Pursuant to Local Civil Rule 9.1 (ECF no. 11) is cited as "Def. Br. __." Plaintiff's Reply Brief (ECF no. 12) is cited as "Pl. Reply __."

1

depression, and high blood pressure. (R. 92-102). Santiago Luna's application was denied on June 12, 2013 (R. 92), and upon reconsideration on October 15, 2013. (R. 103).

On December 5, 2014, Santiago Luna appeared with counsel, Agnes Wladyka, at a hearing before ALJ John Giannopoulos. (R. 22-31, 38). Brian J. Daly, a vocational expert, testified. (R. 59-65). On February 11, 2015, the ALJ issued a decision finding Santiago Luna not disabled under the Act because he was able to perform work existing in the national economy. (R. 22-31). On May 23, 2016, the Appeals Council denied Santiago Luna's request for review, (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner. Santiago Luna then appealed to this Court, challenging the ALJ's determination that he was not disabled from July 10, 2011 through February 11, 2015.

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To qualify under that statute, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

2

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will

"determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where

4

the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Giannopoulos (the "ALJ") properly followed the five-step process in determining that Santiago Luna was not disabled for the period of July 10, 2011 through February 11, 2015. His findings may be summarized as follows:

**Step 1:** At step one, the ALJ determined that Santiago Luna had not engaged in substantial gainful activity in the relevant period. (R. 24).

**Step 2:** At step two, the ALJ found that Santiago Luna had the following severe impairments: "fracture of the lower leg; herniated disk of the lumbar spine; and high blood pressure." (R. 24).

**Step 3:** At step three, the ALJ determined that, through February 11, 2015, Santiago Luna did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 25).

**Step 4:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Santiago Luna had the following residual functional capacity (RFC):

> to perform the full range of sedentary work as defined in 20 CFR 404.1567(b), with the following additional limitations: the claimant is able to walk up to 1 hour; must be able to sit and stand at the claimant's discretion; cannot use the left foot or leg for foot controls; can never climb ramps or stairs; never ladders or scaffolds; never balance; must avoid all exposure to humidity or wetness; cannot work outdoors; can only occasionally stoop; never kneel, crouch or crawl; never work at unprotected heights; only occasionally be exposed to moving mechanical parts; occasionally operate an automobile; and have no exposure to vibrations.

(R. 26).

The ALJ found that Santiago Luna's past work delivering outdoors, loading and unloading, and working as a construction laborer exceeded his current residual functional capacity. (R. 29).

**Step 5:** At step five, the ALJ considered Santiago Luna's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines, and determined that Santiago Luna is able to perform other jobs existing in significant numbers in the national economy. (R. 29-30). Relying on the testimony of a vocational expert ("VE"), Brian Daly, the ALJ identified several representative unskilled jobs that Santiago Luna could perform despite his limitations: (1) surveillance system monitor (Director of Occupational Titles ("DOT") # 379.367-010); order clerk (DOT # 249.362-062); and address clerk (DOT # 209.587-010). (R. 30). According to the VE, more than 390,000 such jobs exist nationally. (R. 30). Moreover, the ALJ noted that Santiago Luna could still work as a surveillance system monitor even if he had to be off task for 10% of the workday, could only perform simple routine tasks, was limited to simple work-related decisions, and was limited to only occasional interaction with the public. (R. 30).

Accordingly, the ALJ concluded that Santiago Luna was not under a disability, as defined in the Social Security Act, from July 10, 2011 through February 11, 2015. (R. 30).

### C. Analysis of Santiago Luna's Appeal

Santiago Luna challenges ALJ Giannopoulos's determination that he was not disabled during the relevant period. He claims that the ALJ committed errors at steps two, three, four, and five. At step two, Santiago Luna argues, the ALJ lacked substantial evidence to support the decision that his depression was not severe. (Pl. Br. 13-15). He asserts that the ALJ was in error by stating that no medically acceptable source diagnosed him with depression; and that the ALJ should have ordered a psychiatric examination to fully develop the record. (Pl. Br. 12-13).

6

At step three, Santiago Luna argues, the ALJ did not properly determine that his conditions are not equivalent to any impairment found in the Listing of Impairments. (Pl. Br. 20-27). At step four, Santiago Luna argues, the ALJ erred by not fully crediting his subjective complaints when determining his RFC. (Pl. Br. 11-12, 17-19).

Finally, Santiago Luna argues that the ALJ erred at step five. He claims that the ALJ failed to construct hypotheticals that "accurately portray the claimant's individual and mental limitations" and thus found him able to perform work outside the ALJ's RFC determination. (Pl. Br. 27).

Santiago Luna requests that this Court reverse the ALJ's decision or remand the decision to the Commissioner for a new hearing and decision. (Pl. Reply 6). Addressing each of Santiago Luna's arguments in turn, I find that the ALJ's findings do not contain any errors of law or procedure, and that his findings are supported by substantial evidence.

### 1. The ALJ's Step Two Evaluation

Santiago Luna argues ALJ Giannopoulos erred in step two by not including depression among Santiago Luna's "severe" impairments. (Pl. Br. 11-12). The ALJ found that Santiago Luna's severe impairments included "fracture of the lower leg; herniated disk of the lumbar spine; and high blood pressure." (R. 24). However, the ALJ did not find Santiago Luna's depression to be "severe." (R. 24). Santiago Luna makes three arguments at step two: (1) the ALJ had a duty to order a psychiatric evaluation if the record was unclear; (2) the ALJ erred in finding that no acceptable medical sources diagnosed him with depression; and (3) the ALJ should have determined that his depression was a severe impairment. (Pl. Br. 11-13).

(1) First, Santiago Luna argues that the ALJ should have ordered a psychiatric evaluation to fully complete the record. (Pl. Br. 13). It is true that "Social Security proceedings are inquisitorial rather than adversarial" and "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sim v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing

7

*Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). (Pl. Br. 13). However, "[t]he claimant first must bear the burden of showing ... at step two that he has a medically severe impairment or combination of impairments ...." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The ALJ is not the claimant's adversary, but the claimant still bears the burden of proof at step two. *Id.* There was no gap in the record that required the ALJ to order an additional evaluation.

(2) Second, the ALJ noted that Santiago Luna was diagnosed with depression by a nurse practitioner, which the ALJ did not regard as an acceptable medical source. (R. 26, 281-83). An ALJ generally gives controlling weight to medical opinions from "acceptable medical sources" such as licensed physicians or psychologists, but has no duty to accept the diagnosis of a nurse practitioner. 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Santiago Luna notes that Dr. Jafari, his primary care physician, treated him for depression. (Pl. Reply 3). But, as the ALJ noted, Dr. Jafari never diagnosed Santiago Luna with depression, and even if he had, this would have been a diagnosis outside of his area of expertise. (R. 26).

(3) It is, however, immaterial whether the ALJ gave enough weight to a nurse practitioner's diagnosis of depression or a physician's treatment of symptoms of depression. Even assuming the validity of such a diagnosis, the ALJ's decision to not consider Santiago Luna's depression "severe" is supported by substantial evidence in the record. The nurse practitioner's examinations indicate that Santiago Luna was alert and fully oriented; they do not suggest that his depression would prevent him from working. (R. 282-83, 285, 287, 295). There still is no evidence indicating that Santiago Luna's mental health would impact his ability to perform work beyond the limitations described in the RFC.

In so concluding, the ALJ properly considered the medical evidence to determine if Santiago Luna's depression was "severe." He evaluated four broad functional areas in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R. pt. 404, subpt.

8

P, app. 1): daily living; social functioning; concentration, persistence, or pace; and decompensation. (R. 25). The ALJ was able to conclude, based on the evidence presented, that Santiago Luna's mental health caused no more than a "mild" limitation. (R. 25).

Ultimately, the ALJ's decision that Santiago Luna's depression did not meet the step two severity test was supported by substantial evidence. Additionally, the ALJ continued to consider any effects of Santiago Luna's depression, in combination with other impairments, throughout the subsequent steps. (R. 24-25).

### 2. The ALJ's Step Three Evaluation

At step three, the ALJ determined that, through February 11, 2015, Santiago Luna did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P., app. 1, pt. A. (R. 25). As noted previously, those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.

Santiago Luna argues that the ALJ erred by not finding that he met the criteria under a Listing. (Pl. Br. 15-17). The ALJ considered Listings 1.04 and 1.06. (R. 25-26). The claimant bears the burden of proving that his impairments, whether individually or collectively, equal or meet those listed in Appendix 1. Santiago Luna has not met this burden.

Listing 1.04 and Listing 1.06 were both rejected because the ALJ found that Santiago Luna had not lost the ability to ambulate effectively. (R. 25-26). An inability to ambulate effectively is defined generally in 1.00(B)(2)(b) as "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P. app. 1 § 1.00(B)(2)(b). This section also lists examples of activities, including shopping, that would tend to establish whether a person is able to ambulate effectively. *Id.*

9

Treatment notes indicate that Santiago Luna sometimes walked without a limp. (R. 304). His surgeon recommended that he needed only a knee brace to walk, and treatment notes dating from 2014 state that he did not need a cane to walk. (R. 267, 321). Santiago Luna also admitted that he retained the ability to go shopping, further supporting the ALJ's decision he does not meet the Listing's threshold. (R. 203).

Even if Santiago Luna could not ambulate effectively, he would still fail to meet the other requirements of Listing 1.04. Listing 1.04 requires a disorder of the spine "resulting in compromise of nerve root" or the spinal cord, as well as the criteria listed in either 1.04A, 1.04B, or 1.04C. 20 C.F.R. pt. 404, subpt. P. app. 1 § 1.04. Santiago Luna does not meet the Listing 1.04A requirement of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," even when considering his chiropractor's evaluation of his cervical spine. (R. 25, 303-06). Rather, several treatment notes indicate his lower extremity strength was found to be full or near full. (R. 266, 271, 316). Listing 1.04B requires spinal arachnoiditis. 20 C.F.R. pt. 404, subpt. P. app. 1 § 1.04. Santiago Luna has not been diagnosed with spinal arachnoiditis. (R. 25). Listing 1.04C requires "[l]umbar spinal stenosis resulting in pseudoclaudication," *id.*, which likewise is not established in the record. (R. 25).

While Santiago Luna sometimes uses a cane, there is substantial evidence to support the ALJ's determination that Santiago Luna has not lost the ability to ambulate effectively and does not satisfy other requirements of Listing 1.04. Therefore, the ALJ did not err at step three.

### 3. The ALJ's Step Four Evaluation

At stage four, the ALJ determined that Santiago Luna did not retain the residual functional capacity ("RFC") to perform past relevant work. (R. 26). The ALJ found that Santiago Luna currently had the RFC to perform a range of sedentary work with several limitations. (R. 26). *See* section II.B, *supra,* for a full quotation of the ALJ's RFC determination.

10

RFC is an assessment of the most a claimant can do despite his impairments. 20 C.F.R. § 404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms that can reasonably be accepted as consistent with the objective medical evidence, and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529. Santiago Luna argues that the ALJ improperly dismissed his subjective complaints and otherwise ignored evidence. (Pl. Br. 20-27).

It is true that the ALJ must consider all relevant evidence, including subjective complaints, in determining the RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)). However, the plaintiff retains the burden of supporting his alleged RFC limitations. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1545(a) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity.").

In terms of the RFC, Santiago Luna argues that (a) the ALJ did not properly discuss the medical record and (b) did not properly credit Santiago Luna's subjective complaints. Upon review of the record, however, I find that substantial evidence supports the ALJ's RFC decision.

### a) The ALJ's Analysis of the Medical Record

First, the ALJ properly synthesized and evaluated the medical record when determining Santiago Luna's RFC. Santiago Luna argues that the ALJ ignored evidence that he needed assistance walking and thus came to an incorrect conclusion regarding his ability to ambulate effectively. (Pl. Br. 15-16). However, the ALJ properly synthesized Santiago Luna's medical history, including subjective reports of pain and difficulties, and incorporated these limitations into Santiago Luna's RFC. (R. 26-29). Moreover, there is substantial evidence to show that Santiago Luna can perform sedentary work. In fact, Santiago Luna's surgeon found that he could perform light work and the State

11

agency physician found that he could perform a range of sedentary work. (R. 29).

Santiago Luna also claims that the ALJ's finding that he could walk for an hour contradicts the findings of the reviewing physicians. (Pl. Br. 22). The ALJ had substantial evidence to support this determination. Dr. Shaninian and Dr. Rizwan both found that Santiago Luna could stand or walk (with normal breaks) for a total of 4 hours during the workday. (R. 98, 110). Dr. Eyassu found that Santiago Luna had a "[m]oderate limitation on prolonged walking and prolonged stair climbing." (R. 272). Furthermore, the RFC incorporates the limitation that Santiago Luna should be able to sit or stand at his discretion; that would prevent him from having to stand or walk for prolonged periods. (R. 26).

Additionally, Santiago Luna asserts that the ALJ should have added limitations to the RFC based on his cervical neck pain, as diagnosed by his chiropractor. (Pl. Br. 24-25). As discussed above, a diagnosis from a "non-acceptable medical source," such as a chiropractor, does not establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Additionally, the chiropractor's record does not indicate that Santiago Luna's cervical-spine-related symptoms require additional limitations beyond those stated in the RFC. (R. 303-11). The ALJ was entitled to give more weight to the other medical evidence.

### b) The ALJ's Credibility Determination

Second, Santiago Luna argues that the ALJ erred by not fully crediting his subjective complaints. (Pl. Br. 11-12, 17-19). An ALJ may reject or only partially credit subjective complaints if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Nonetheless, the ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." SSR 96–7p; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). In this

case, the ALJ did what was required by articulating specific reasons for his credibility findings that were supported by the evidence in the record.

SSR 96–7p provides that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." *Id.* The regulation then prescribes a two-step process for evaluating a claimant's statements about his own physical or mental impairments. Such statements, by themselves, are insufficient to establish the existence of an impairment or disability. *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96–7P (S.S.A. July 2, 1996). Instead, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

At the first step of the credibility-determination process, the ALJ first determined that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 26). At the second step of this process, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible …." (R. 26). "While the record established that the plaintiff has some level of pain and therefore some limitations, it does not establish that his impairments are completely disabling." (R. 29).

For instance, Santiago Luna testified before the ALJ that he does little else but watch television. (R. 29). However, in his function report dated January 16, 2013, he indicated that he reads, visits his family, attends church,

and shops in stores. (R. 29). He also reported that he can pay attention for long periods of time and can follow written and spoken instructions "very well." (R. 29, 203-05). Doctors have stated that Santiago Luna has "intact motor strength in the bilateral and lower extremities," that he is able to walk at times without assistance, and does not always have an antalgic gait. (R. 29). One doctor reported that Santiago Luna could perform light duty in December 2012, more than a year after he claimed he was completely disabled. (R. 29, 265). Two other doctors reported that Santiago Luna could perform a range of sedentary work. (R. 98-100, 110-12).

Altogether, there was sufficient evidence for the ALJ to determine that Santiago Luna's subjective testimony is only partially credible. "Despite the evidence demonstrating that the claimant has suffered from a medically determinable 'severe' impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work." (R. 29). Santiago Luna's RFC incorporates the limitations suggested by the medical evidence and gives further restrictions based on Santiago Luna's subjective testimony. (R. 29). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determination. In this case, the ALJ appropriately evaluated Santiago Luna's credibility given the record.

### 4. The ALJ's Step Five Evaluation

At step five, the ALJ considered Santiago Luna's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines, and determined that Santiago Luna is able to perform other jobs existing in significant numbers in the national economy. (R. 29-30). The ALJ relied on the testimony of a vocational expert ("VE") to identify representative unskilled jobs that Santiago Luna could perform despite his limitations. (R. 30).

Santiago Luna argues that the ALJ and VE incorrectly determined that he could perform jobs in the national economy. This challenge, in many ways, duplicates his challenge to the RFC. The underlying argument is that the ALJ's ultimate finding rests on an RFC that overstated his abilities. The ALJ's determination of Santiago Luna's RFC, however, was supported by substantial evidence, as established in section II.C.3, *supra*.

Santiago Luna states that the ALJ failed to construct hypotheticals that accurately portrayed his limitations, which led the VE and ALJ to list jobs that conflicted with Santiago Luna's RFC. It is true that a hypothetical question posed to a VE must reflect all of claimant's specific limitations that are supported by substantial evidence. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). That does not mean, however, that the VE must be asked to opine on all limitations *alleged* by a claimant. *See Rutherford v. Barhnart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead ... hypotheticals posed must accurately portray the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments as contained in the record.... [T]he ALJ must accurately convey to the vocational expert all of claimant's *credibly established limitations*." (internal quotation marks and citations omitted)).

At the hearing, the ALJ asked the VE to consider a hypothetical individual with Santiago Luna's age, education, vocation and RFC. (R. 61). The ALJ stated Santiago Luna's RFC, including all credibly established limitations. (R. 61-62). Thus, the AJF accurately portrayed Santiago Luna's credibly established limitations to the VE in the hypotheticals.

As a further argument, Santiago Luna claims that he "is limited to simple tasks [and thus] cannot, in fact, perform these jobs according to the DOT"

15

because the job of surveillance system monitor requires a reasoning level of 3. (Pl. Br. 25-27). However, Santiago Luna's RFC does not state that he is limited to performing simple and routine tasks. (R. 26). Moreover, Santiago Luna self-reported that he can pay attention for long periods, finish what he starts, and follow written and spoken instructions "very well." (R. 205). This particular argument appears to be another attack on the RFC, which, for the reasons stated above, is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, Mr. Santiago Luna has failed to demonstrate that the ALJ's decision was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Santiago Luna's claims for DIB, which is therefore AFFIRMED. An appropriate order accompanies this Opinion.

Dated: September 14, 2017

**KEVIN MCNULTY**
**United States District Judge**